IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK K. SCHULTHIES,

    Plaintiff,

  v.

NATIONAL PASSENGER RAILROAD CORPORATION dba AMTRAK, JOSEPH W. DEELY, STEVEN SHELTON, and DOES 1 through 15 inclusive,

    Defendants.
    /

No. C 08-5538 CW

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

    Defendants National Passenger Railroad Corporation (AMTRAK), Joseph W. Deely and Steven Shelton move to dismiss all claims in Plaintiff Mark K. Schulthies' complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposes the motion, except in regard to two of the claims against Defendants Deely and Shelton.  The matter was heard on July 16, 2009.  Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS Defendants' motion with leave for Plaintiff to amend his complaint.

BACKGROUND

Plaintiff alleges the following in his complaint. Plaintiff was employed by AMTRAK, a public entity organized and created by the United States, from February, 1992 to January 10, 2007. On October 29, 2006, Plaintiff sent an e-mail to Eugene Skoropowski, Managing Director of the Capitol Corridor Joint Powers Authority (CCJPA). The e-mail requested that Mr. Skoropowski investigate the danger to the public of AMTRAK's decision to reorganize AMTRAK Engineer work locations between the Bay Area and Bakersfield which would allow one engineer to operate a train, as opposed to two engineers. Plaintiff was motivated to send the e-mail by concern for danger to the general public and for unsafe working conditions. Plaintiff sent this e-mail in his capacity as a private citizen and not as a part of his professional duties. On or about November 3, 2006, Defendants Deely and Shelton, managers at AMTRAK with sufficient authority to bind AMTRAK in employment decisions regarding Plaintiff, issued to Plaintiff a Notice of Formal Investigation based on his e-mail to Mr. Skoropowski. On or about January 10, 2007, Defendants AMTRAK, Shelton and Deely terminated Plaintiff's employment.

On December 10, 2008, Plaintiff filed this complaint alleging the following causes of action, each against all Defendants: (1) a civil rights claim, based on Defendants' retaliation against him for exercising his First Amendment rights; (2) wrongful termination in violation of public policy; and (3) retaliation, in violation of California Labor Code Section 6310. In his opposition, Plaintiff does not oppose Defendants' motion to dismiss

2

the second and third causes of action against Defendants Deely and Shelton. Therefore, these claims against Deely and Shelton are dismissed with prejudice.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The Ninth Circuit holds that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on

3

1  other grounds, Galbraith v. County of Santa Clara, 307 F.3d 1119
2  (9th Cir. 2002)).

DISCUSSION

I.  Preliminary Matter: The E-Mail to Eugene Skoropowski

Defendants submit a copy of the e-mail that Plaintiff sent to Mr. Skoropowski, as forwarded to Defendants Deely and Shelton with Mr. Skoropowski's comments, (Deely Decl., Ex. A.), and base some of their arguments on it.  Plaintiff contends that because Defendants have provided a document that contains the e-mail to which the complaint refers, and not the e-mail itself, it would be improper for the Court to consider the document on a Federal Rule of Civil Procedure 12(b)(6) motion and all arguments relating to its contents must be disregarded.  Because Defendants do not ask the Court to consider Mr. Skoropowski's comments and because Plaintiff does not dispute the authenticity or accuracy of the e-mail as contained in the forwarded message, Branch permits the Court to consider Plaintiff's e-mail.

II.  Retaliation For Exercise of First Amendment Rights

A. Title 42 U.S.C. Section 1983

Plaintiff's first cause of action is a claim under 42 U.S.C. Section 1983 that Defendants retaliated against him for a protected exercise of his rights under the First Amendment of the United States Constitution.  Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  To state a claim under Section 1983, a plaintiff must

4

allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

In Lebron v. National R.R. Passenger Corp., 513 U.S. 374, 394 (1995), the Supreme Court found that AMTRAK "is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the Government by the Constitution." Because AMTRAK is a federal actor and not a state actor, Plaintiff may not assert his claim for violation of his First Amendment rights under Section 1983. Instead, Plaintiff may assert this claim under the authority of Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971), which established that constitutional claims may be brought against federal actors.[1] Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's First Amendment claim, without prejudice to re-filing as a Bivens claim if appropriate.

---

[1] In Bush v. Lucas, Bush, a NASA employee, was removed from his position after making critical statements about NASA to the press. Bush v. Lucas, 462 U.S. 367, 369 (1983). Bush sued NASA in a Bivens action, alleging retaliatory action against him for the protected exercise of his First Amendment rights. Id. at 371-72. Because the Civil Service Commission provides "an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures -- administrative and judicial -- by which improper action may be redressed," id. at 385, the Court declined to allow the Bivens action to go forward, id. at 390. Thus, depending upon the statutory and regulatory protections afforded to AMTRAK employees, a Bivens action may not be available to Plaintiff.

5

B. Defendants Deely and Shelton

Defendants argue that Plaintiff's First Amendment claim against Defendants Deely and Shelton should be dismissed because they are entitled to qualified immunity. A defense of qualified immunity is available under a Bivens action. Butz v. Economou, 438 U.S. 478, 500-501 (1978). Thus, the Court will address the qualified immunity defense here.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). A ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Saucier, 533 U.S. at 200.

A court considering a claim of qualified immunity must

1  determine whether the plaintiff has alleged the deprivation of an
2  actual constitutional right and whether such right was clearly
3  established such that it would be clear to a reasonable actor that
4  his conduct was unlawful in the situation that confronted him.
5  Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009)
6  (overruling the sequence of the two-part test that required
7  determination of a deprivation first and then whether such right
8  was clearly established, as required by Saucier).  The court may
9  exercise its discretion in deciding which prong to address first,
10 in light of the particular circumstances of each case.  Id.

11      In this case, Defendants do not contest that Plaintiff has
12 alleged the deprivation of an actual constitutional right, but they
13 do argue that the right was not clearly established such that it
14 would be clear to a reasonable actor that terminating Plaintiff's
15 employment for exercising that right was unlawful.  To establish
16 this, Defendants draw an analogy between this case and Brewster v.
17 Bd. of Educ., 149 F.3d 971 (9th Cir. 1998), in which the Ninth
18 Circuit held that school officials enjoyed qualified immunity from
19 a teacher's First Amendment claim.  The issue was whether it was
20 clearly established that the teacher's speech was deserving of
21 constitutional protection.  Id. at 977-78.  The Brewster court
22 applied a balancing test first announced in Pickering v. Bd. of
23 Educ., 391 U.S. 563, 568 (1968), which held that whether the speech
24 of a government employee is constitutionally protected expression
25 necessarily entails striking "a balance between the interests of
26 the [employee], as a citizen, in commenting on matters of public
27 concern and the interest of the State, as an employer, in promoting
28

7

the efficiency of the public services it performs through its employees."[2]  The Brewster court found that a "number of balancing considerations weigh in favor of the school officials:" (1) that the employee expression "disrupts harmony among co-workers;" (2) that the employment relationship in question was one requiring "trust and respect in order to be successful;" (3) that the "employee's speech interferes with the fulfillment of his own office duties;" and (4) that the speech was "not directed to the public or the media, but rather to a governmental colleague." Id. at 980-81.  Defendants argue that, as in Brewster, it would have been reasonable to predict that Plaintiff's e-mail might cause disharmony at least among Mr. Schulthies, Mr. Deely and Mr. Shelton, as well as disharmony between AMTRAK and Mr. Skoropowski and the CCJPA, and that the factors found relevant in Brewster weigh in favor of finding qualified immunity in this case.

Brewster, which addressed the issue of qualified immunity in a motion for summary judgment, recognized that "the Pickering test requires particularized balancing on the unique facts presented in each case" and "requires a fact-sensitive, context-specific balancing of competing interests." Id. at 979-80.  Defendants attempt to find the facts relevant to a Pickering test in the e-mail, but it does not contain all the necessary facts.  For example, the Brewster court considered the nature of the work

---

[2] The Supreme Court, in Garcetti v. Ceballos, 547 U.S. 410, 426 (2006), recently limited the protection afforded to speech by public employees pursuant to their official duties.  That holding does not apply to this motion because Plaintiff alleges that his expression was made in his capacity as a private citizen and not pursuant to his official duties.

8

1 relationships between the parties and the effects on the
2 plaintiff's duties.  Id. at 981.  No analogous allegations that
3 would permit the Court to conclude that the e-mail would cause
4 disharmony among the parties are in the complaint or in the e-mail.
5 The Court cannot determine, based on the record, whether or not
6 Defendants Deely's and Shelton's conduct violated rights that were
7 clearly established such that a reasonable actor would have known
8 the conduct to be unlawful.  Thus, the Court cannot adjudicate the
9 question of qualified immunity at this time.  Defendants' motion to
10 dismiss on this basis is denied without prejudice to re-filing at
11 the appropriate time in a motion for summary judgment.

   C. Defendant AMTRAK

13 Defendants argue that the Court should dismiss the First
14 Amendment retaliation claim against AMTRAK because the complaint
15 does not allege sufficient facts to establish liability under the
16 Monell standard.

17 Municipalities cannot be held vicariously liable under Section
18 1983 for the actions of their employees.  Monell v. Dept. of Social
19 Services of the City of N.Y., 436 U.S. 658, 691 (1978).  "Instead,
20 it is when execution of a government's policy or custom, whether
21 made by its lawmakers or by those whose edicts or acts may fairly
22 be said to represent official policy, inflicts the injury that the
23 government as an entity is responsible under § 1983."  Id. at 694.
24 In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1940 (2009), the
25 Supreme Court cited Monell for the proposition that vicarious
26 liability is inapplicable to Bivens claims as well as Section 1983
27 claims, indicating that Monell is applicable to Bivens claims.

There are three ways to meet Monell's policy or custom requirement:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity."  Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy. . . .  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal citations omitted).  Plaintiff depends on the second and third avenues specified above to establish AMTRAK's liability under Monell.  Plaintiff argues that he has alleged that Defendants Deely and Shelton are officials with final policy-making authority (second avenue) or, in the alternative, that Defendant AMTRAK ratified the allegedly unconstitutional actions of Deely and Shelton (third avenue).  Plaintiff has alleged that Defendants Deely and Shelton have sufficient authority to bind AMTRAK with regard to employment decisions affecting Plaintiff, but this is not an allegation that these Defendants have final policy-making authority for any sphere of activity.  Plaintiff's alternative position is that AMTRAK ratified Deely's and Shelton's actions, presumably because as an organization it did not repudiate their actions.  The alternative position fails because the third Monell avenue applies to an "official," not to the organizational entity.[3]

---

[3] Allowing the organizational entity to stand in as an "official with final policy-making authority" would subvert the holding of Monell, because, under this reasoning, the

(continued...)

10

Thus, Plaintiff's complaint does not allege sufficient facts to state a claim against AMTRAK, under the <u>Monell</u> standard, for the violation of Plaintiff's First Amendment Rights.

III. Retaliation in Violation of California Labor Code Section 6310

Plaintiff's third cause of action is a state law claim for retaliation in violation of California Labor Code Section 6310. Defendants argue that this claim against AMTRAK should be dismissed because Plaintiff's e-mail to Mr. Skoropowski, Managing Director of the CCJPA, is not protected by Section 6310, which states that it is unlawful to "discharge or in any manner discriminate against any employee" who has "[m]ade any oral or written complaint to the division [of Labor Law Enforcement], other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative." § 6310(a)(1). Defendant AMTRAK contends that the CCJPA is not one of the entities covered by this clause and Plaintiff contends that it is. Federal Rule of Civil Procedure 8(a) does not require Plaintiff to make the specific allegation that CCJPA is covered by Section 6310. That is a mixed issue of law and fact which the Court cannot decide at this early stage of proceedings.[4]

---

[3](...continued)
organizational entity could always be held vicariously liable on the theory that the organization had "ratified" a subordinate's action if the action was unrepudiated.

[4] Plaintiff argues that because the CCJPA is subject to enforcement of the Occupational Safety and Health Administration (OSHA), the CCJPA has a responsibility to assist OSHA with reference to employee safety and health and is therefore an entity covered by Section 6310. Under this reasoning, any governmental
(continued...)

11

AMTRAK also argues that it has not violated Section 6310 because the e-mail was not a bona fide complaint about unsafe working conditions or work practices. If an employee is discriminated against for making "a bona fide oral or written complaint" of unsafe work conditions or practices, the employee is entitled to reinstatement and reimbursement for lost wages and work benefits. § 6310(b).

Plaintiff begins his e-mail with a warning that service along a rail route would be disrupted because of AMTRAK's plan for a new work location,[5] which would allow trains on the route to operate with one engineer rather than with two, because the length of the segments of the route would be shorter. A rail service disruption does not naturally imply an issue of safety to the public or to workers.

In his e-mail, Defendant goes on to argue that the new work location will require more management supervision, will not save money, and may disrupt the families of engineers living and working in Oakland or Sacramento. None of these arguments implies an issue of safety to the public or to workers.

Although Plaintiff alleges that safety concerns motivated him to send the e-mail, the e-mail itself does not reflect this motivation and can fairly be read only to address efficiency,

---

[4](...continued) agency would be an entity covered by Section 6310. This argument, made without supporting authority, is unpersuasive.

[5] A "work location" is not defined, but the e-mail implies that it is a location where a train could stop and a replacement engineer could board the train. Thus, the new work location could cut a long rail segment, which would require two engineers because of its length, into two shorter segments, each of which would require only one engineer.

12

monetary waste, and disruption of employees' families.  Because Plaintiff's e-mail cannot reasonably be interpreted to address safety concerns, termination of his employment for sending the e-mail was not a violation of Section 6310.  Accordingly, the Court grants with leave to amend Defendants' motion to dismiss Plaintiff's claim for retaliation in violation of California Labor Code Section 6310.

IV. Wrongful Termination in Violation of Public Policy

A. Legal Standard

In California, employment of indefinite duration is generally considered to be at-will.  Cal. Labor Code § 2922.  However, an employer's right to terminate an at-will employee is "subject to limits imposed by public policy, since otherwise the threat of discharge could be used to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal."  Collier v. Superior Court, 228 Cal. App. 3d 1117, 1121 (1991) (citing Foley v. Interactive Data Corp., 47 Cal. 3d 654, 655 (1988)).  Thus, a tortious wrongful discharge claim will lie when an employee "is discharged for performing an act that public policy would encourage, or for refusing to do something that public policy would condemn."  Gantt v. Sentry Insurance, 1 Cal. 4th 1083, 1090 (1992) (partially overruled on other grounds by Green v. Ralee Engineering Co., 19 Cal. 4th 66 (1998)).  The public policy that gives rise to a wrongful termination action must have "a basis in either constitutional or statutory provisions."  Green, 19 Cal. 4th at 80 (quoting Gantt, 1 Cal. 4th at 1095).

B. Discussion

Plaintiff's claim for wrongful termination in violation of

13

public policy is based on the public policy established by California Labor Code Sections 6310 and 1102.5(b). Section 1102.5(b) provides, "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Plaintiff does not allege that when he wrote the e-mail he believed that Defendant AMTRAK was violating a statute or regulation or that he believed the e-mail to disclose a violation. The e-mail itself is concerned with efficiency, monetary waste and disruption of employees' families and cannot reasonably be interpreted to disclose a violation of a statute or regulation.[6] Thus, Plaintiff's allegations do not support a claim for wrongful termination in violation of the public policy established by Section 1102.5(b). Because the Court has dismissed Plaintiff's claim that Defendants violated Section 6310, there is no basis for the allegation that AMTRAK violated the public policy established by Section 6310. Accordingly, the Court grants Defendants' motion to dismiss this claim. Plaintiff is granted leave to amend this claim only if he can truthfully allege that his email communicated a violation of a specified state or federal

---

[6] Plaintiff states that if granted leave to amend, he will allege that he reasonably suspected that AMTRAK's reorganization of engineer work locations violated the Federal Rail Safety Act, 49 U.S.C. § 20109. This section of the Federal Rail Safety Act prohibits adverse action by a railroad carrier against employee whistle-blowers. Because AMTRAK had not taken adverse action against Plaintiff when he wrote the e-mail, Plaintiff cannot allege that he had reasonable cause to believe his e-mail disclosed a violation of Section 20109.

14

statute, rule or regulation, other than 49 U.S.C. § 20109.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's complaint. (Docket No. 7.) Plaintiff's claims against Defendants Deely and Shelton for wrongful termination in violation of public policy and retaliation in violation of California Labor Code Section 6310 are dismissed with prejudice. The Court grants Plaintiff leave to amend his complaint to remedy the deficiencies noted above, where he can truthfully do so. An amended complaint must be filed within two weeks of this order. Defendants shall file an answer or a motion to dismiss within two weeks thereafter.

IT IS SO ORDERED.

Dated: 8/17/09

_____
CLAUDIA WILKEN
United States District Judge